UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WALDER JOHEL GUERRA-PERDOMO,

Petitioner,

v.

JULIO HERNANDEZ, et al,

Respondents.

CASE NO. C26-3583JLR

ORDER

## I. INTRODUCTION

Before the court is Petitioner Walder Johel Guerra-Perdomo's petition for a writ of habeas corpus under 28 U.S.C. § 2241. (Pet. (Dkt. # 1); Traverse (Dkt. # 11).) The Government[1] opposes the petition. (Return (Dkt. # 8).) The court has considered the

[1] The Federal Respondents are Enforcement and Removal Operations ("ERO"), United States Immigration and Customs Enforcement ("ICE") Seattle Field Office Director Julio Hernandez; United States Department of Homeland Security ("DHS") Markwayne Mullin; United States Attorney General Todd Blanche; and DHS (collectively, the "Government").

parties' submissions, the record, and the governing law. Being fully advised, the court GRANTS the petition IN PART.

## II. BACKGROUND

Petitioner is a native and citizen of Honduras who applied for admission into the United States on October 31, 2015, as an unaccompanied minor at the Hidalgo, Texas port of entry. (Reed Decl. (Dkt. # 9) ¶ 4.) U.S. Customs and Border Protection determined that Petitioner was inadmissible to the United States and detained him. (*Id.*) In November 2015, ERO transferred custody of Petitioner to the Office of Refugee Resettlement who later released him to his mother's custody. (*Id.* ¶¶ 5-6.) In April 2017, ERO served Petitioner with a Notice to Appear and enrolled him in removal proceedings. (*Id.* ¶ 7.) On August 30, 2023, USCIS granted Petitioner Special Immigrant Juvenile ("SIJ") status with deferred action ("DACA"). (*Id.* ¶ 8; Pet. at 2; Collins Decl. (Dkt. # 10), ¶ 2, Ex. D (Deferred Action).)

On September 23, 2024, Petitioner was arrested in connection with an altercation with his ex-girlfriend. (Pet. Decl. (Dkt. # 2) ¶¶ 9-10.) On November 27, 2024, the District Court of Baltimore, Maryland, convicted Petitioner of malicious destruction of property.[2] (Collins Decl. ¶ 2, Ex. E (Criminal Charges) at 1-8; Reed Decl. ¶ 9; Pet. ¶ 21.) He was sentenced to 50 days in jail and 18-months' supervised probation. (Criminal

[2] The Government contends, and Petitioner disputes, that on May 6, 2024, Petitioner was convicted in the District Court for Talbot County of unlawful taking of a motor vehicle and violating a protective order, for which he was sentenced to two-years' incarceration. (Return at 2 (citing Reed Decl. ¶ 10; Criminal Charges); *see also* Traverse at 3 (disputing this allegation).) Petitioner's criminal history, however, does not reflect that Petitioner was charged or sentenced on that date. (*See generally* Criminal Records.)

Charges at 9; Reed Decl. ¶ 9.) Petitioner later violated the terms of his probation and was sentenced to 18-months' incarceration, from which he was released early on good behavior after 10 months. (Pet. Decl. ¶¶ 11-12; Pet. ¶ 21.) On February 17, 2025, Petitioner was arrested and charged in Talbot County, Maryland, for second degree assault, robbery, harassment, false imprisonment, reckless endangerment, stalking, theft, resisting arrest, and violating a protective order. (Criminal Charges at 9-10.) On December 11, 2025, the Baltimore, Maryland, Immigration Court held a hearing for Petitioner, which he could not attend because he was incarcerated. (Pet. ¶ 22.) The Immigration Judge ("IJ") ordered Petitioner removed to Honduras *in absentia*. (Reed Decl. ¶ 11.; Pet. ¶ 22; Collins Decl. ¶ 2, Ex. F (2025 IJ Order).) When Petitioner completed his custodial sentence, the Government immediately transferred him to ICE custody and held him in facilities in Maryland and Arizona, before transferring him to the Northwest ICE Processing Center in Tacoma, Washington, where he is presently detained. (Pet. ¶ 23; Reed Decl. ¶¶ 12-13, 18.)

On March 26, 2026, an IJ in Baltimore, Maryland, granted Petitioner's motion to re-open his immigration proceedings. (Reed Decl. ¶ 14; Collins Decl. ¶ 2, Ex. H (2026 IJ Order).) On July 30, 2026, Petitioner appeared at a merits hearing in Tacoma, Washington. (Reed Decl. ¶ 15.) The IJ denied Petitioner's applications for relief from removal and ordered Petitioner removed to Honduras. (*Id.*; Collins Decl. ¶ 2, Ex. I (Final Order of Removal).) Petitioner appealed the IJ's decision to the Board of Immigration Appeals on August 24, 2026, and that appeal remains pending. (Reed Decl. ¶ 15.) On September 23, 2026, Petitioner filed the instant petition (1) asserting that, in light of his

DACA status, his continued detention without a pre-deprivation notice or hearing violates his due process rights and (2) seeking his immediate release. (Pet.) On October 1, 2026, USCIS mailed Petitioner a DACA revocation notice.[3] (Reed Decl. ¶ 16; Collins Decl. ¶ 2, Ex. J (Revocation Not.).) The petition is fully briefed and ripe for the court's consideration.

## III. ANALYSIS

The court first addresses the Government's statutory detention authority before turning to the parties' due process arguments.

### A. Petitioner is Detained Under Section 1226(a).

The court grants the petition in part. In so holding, the court explicitly and fully adopts the reasoning and legal analysis of *Quinonez Torres v. Hermosillo*, No. C26-0076TLF, 2026 WL 547591, at *1 (W.D. Wash. Feb. 23, 2026), a case presenting material parallels to the case at bar. In *Quinonez Torres*, the petitioner, a native and citizen of Guatemala, entered the United States without inspection as an unaccompanied minor before being released from federal custody and granted SIJ and DACA status. *Id.* He later accumulated a criminal record before being re-detained by the Government. *Id.* at *2-3. In granting that petition in part, the *Quinonez Torres* court determined that individuals who enter the United States as unaccompanied minors and are later granted SIJ and DACA status are detained under 8 U.S.C. § 1226(a) rather than the mandatory

[3] Petitioner asserts that the Government failed to directly notify him of its intent to revoke his DACA status. (Pet. Decl. (Dkt. # 12) ¶¶ 4-7; Traverse at 4.) While the court acknowledges the parties' factual dispute regarding the timing of Petitioner's notification, resolving this issue is not material to the disposition of the petition before the court.

detention provisions of § 1225(b). *Id.* at *5-6; *see also Del Valle Castillo v. Wamsley*, No. C25- 2054TMC, 2025 WL 3524932, at *7 (W.D. Wash. Nov. 26, 2025) (reaching the same conclusion). Accordingly, the court concludes that Petitioner is detained under § 1226(a) and was entitled to a hearing upon his arrest. *Quinonez Torrez*, 2026 WL 547591 at *6.

**B. Due Process Requires a Prompt Post-Deprivation Hearing.**

Furthermore, the court concludes that due process requires that Petitioner receive a post-deprivation bond hearing. Because Petitioner challenges an administrative action depriving him of his liberty, the *Mathews* balancing test applies here. *See Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). The *Mathews* framework determines whether an administrative procedure provides the process constitutionally due and weighs three distinct factors: (1) the petitioner's private interest, (2) the risk of an erroneous deprivation, and (3) the Government's interest. *Id.* In *Rodriguez Diaz v. Garland*, the Ninth Circuit assumed without deciding that the *Mathews* test applies in "the immigration detention context." 53 F.4th 1189, 1206-07 (9th Cir. 2022). Where there are materially changed circumstances between a petitioner's initial release and re-detention–including those that arguably require arrest and detention before a hearing– "a prompt post-deprivation hearing [is] consistent with due process." *Quinonez Torrez*, 2026 WL 547591 at *9.

Relying on the analysis in *Quinonez Torres*, the court determines that the *Mathews* factors compel a finding that due process required the Government to provide Petitioner with notice and an opportunity to be heard. First, regarding the private interest,

Petitioner's interest in not being detained is "the most elemental of liberty interests[,]" particularly because Petitioner was granted SIJ and DACA status. *Id.* at *6 (quoting *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004)). Second, given Petitioner's SIJ and DACA status and extended period of liberty outside of immigration custody, "[t]he risk of erroneous deprivation of petitioner's liberty interest in the absence of any hearing is high." *Id.* at *9. Finally, the Government's interest in arresting and detaining a noncitizen without a hearing is low where the noncitizen was previously released and living in the community. *Id.* at *10. Accordingly, the court orders a prompt post-deprivation bond hearing.

In so holding, the court rejects Petitioner's argument that his SIJ and DACA status, if valid, make him "irremovable" and thus entitled to immediate release. (Traverse at 10.) While SIJ classification provides a pathway to lawful permanent resident status, and DACA provides temporary deferred action, both statuses remain forms of discretionary administrative relief rather than absolute bars to removal. *Quinonez Torres*, 2026 WL 547591 at 2 n.1. Indeed, the Government maintains the authority to revoke DACA status or initiate removal proceedings if an individual is convicted of a felony, a significant misdemeanor, or three or more other misdemeanors. *Ramirez Villagomez v. Hernandez*, No. C26-2730TLF, 2026 WL 2606484, at *5 (W.D. Wash. Sept. 3, 2026); 8 C.F.R. § 236.22(b). To the extent Petitioner challenges the sufficiency of the administrative process the Government used to revoke his DACA status, such a request is not the proper subject of a habeas petition. Accordingly, the court declines to order Petitioner's immediate release.

## IV. CONCLUSION

For the forgoing reasons, the court GRANTS the petition for writ of habeas corpus (Dkt. # 1) IN PART and ORDERS:

(1) The court finds that Petitioner is detained under 8 U.S.C. § 1226(a) and is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2).

(2) The court ORDERS the Government to provide Petitioner a hearing in which the Government bears the burden of proof to justify immigration re-detention by clear and convincing evidence. *Singh v. Holder*, 638 F.3d 1196, 1203-1204 (9th Cir. 2011), (the government must bear the burden of proof for civil commitment by clear and convincing evidence).

(3) The Government must provide adequate notice and due process protections similar to hearings under *Morrissey v. Brewer*, 408 U.S. 471 (1972) within 10 calendar days after this order is filed. The hearing shall be held before an IJ to address the basis for Petitioner's re-detention and any impact on the assessment of dangerousness and risk of flight, and the impact of Petitioner's SIJ and Deferred Action status on the re-commencement of removal proceedings. At the hearing the Government shall bear the burden of proof to justify immigration re-detention by clear and convincing evidence.

(4) If Petitioner is released, the Government must return to Petitioner any personal property, including personal identification documents and employment authorization documents.

//

//

(5) The parties are DIRECTED to file a joint status report **Monday, November 16, 2026**, indicating whether there has been a hearing held before an IJ as ordered above, and whether Petitioner has been released.

(6) The court will entertain any post-judgment motion for attorneys' fees, as requested in the petition.

Dated this 2nd day of November, 2026.

JAMES L. ROBART
United States District Judge